UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

AEG 777, LLC,                                    Case No. 11-15286-BKC-LMI

Debtor.                                          Chapter 11
_____/

## 7770 NOTE ACQUISITION, LLC'S MOTION TO DISMISS BANKRUPTCY CASE AS BAD FAITH FILING, OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY, AND OBJECTION TO USE OF CASH COLLATERAL

7770 Note Acquisition, LLC ("Secured Creditor"), the holder of a final judgment of foreclosure, moves the Court for entry of an Order dismissing the instant Chapter 11 case (the "Chapter 11 Case") filed by AEG 777, LLC ("Debtor"), or, in the alternative, granting Secured Creditor relief from the automatic stay to allow Secured Creditor to continue with its foreclosure action against the Debtor, and most particularly, with a foreclosure sale of the underlying real property securing its indebtedness which sale the Debtor stopped by filing its chapter 11 petition the afternoon before a duly scheduled foreclosure sale in state court. In addition, for the reasons set forth herein, Secured Creditor objects to the Debtor's use of cash collateral.[1] In support thereof, the Secured Creditor states as follows:

### INTRODUCTION

1.      The Debtor's chapter 11 case should be dismissed forthwith as a bad faith filing. As more fully set forth below, on January 10, 2011, the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") entered a Final Judgment of Foreclosure against the Debtor and in favor of Secured Creditor in certain state court litigation which, *inter alia*, determined that Secured Creditor is owed the total amount of $1,742,791.42

---

[1] In its Voluntary Petition (D.E. #1), the Debtor acknowledges that the nature of the Debtor's business is a "single asset real estate case" under 11 U.S.C. § 101(51B).

(hereinafter "the Final Judgment", a copy of which is attached hereto as **Exhibit "A"**). The Final Judgment scheduled a foreclosure sale of the real property securing the indebtedness for March 1, 2011 at 9:00 a.m. ***No appeal of the Final Judgment was taken by the Debtor.*** The Debtor's voluntary petition was filed on February 28, 2011 one day prior to the foreclosure sale.

2. The Debtor's chapter 11 Case is subject to dismissal because there is no realistic possibility of an effective reorganization and the Debtor is seeking solely to delay or frustrate Secured Creditor's efforts to enforce its rights and its non-appealable Final Judgment.

3. Secured Creditor is entitled to relief from the automatic stay because (i) Secured Creditor lacks adequate protection; (ii) by the Debtor's own admissions, the Debtor does not have equity in the property at issue; and (iii) the subject property is not necessary to an effective reorganization. Secured Creditor is also entitled to relief from the automatic stay based on the Debtor's bad faith filing and pre-petition misconduct.

4. Finally, the Debtor should not be permitted to use the Secured Creditor's cash collateral because not only has the State Court already directed the Secured Creditor to collect the rents and to take care of the requisite expenditures to maintain the Property, but also, because the Debtor has not exhibited any ability of maintaining the Property when it had the opportunity in the past. Indeed, even after the State Court ordered that all rents be paid to and collected by the Secured Creditor, the Debtor and its principals – in violation of the Order – (a) sent emails to the existing tenants directing them to continue to pay their rents to the Debtor, and (b) entered into a new lease for space at the Property with the "Landlord" shown not as the Debtor, but rather, another entity owned by the Debtor's principals.

## BACKGROUND

5. The Debtor is a Florida limited liability company and is a single-asset real estate entity that owns a small office building that contains 7 rentable suites located at 7770 SW 104th Street, Pinecrest, Florida 33156 (the "Property"). The Property consists of one small building. The Property was acquired by the Debtor with the proceeds of a $1,440,000 loan (the "Loan") advanced by Washington Mutual Bank, a federal association, pursuant to a Promissory Note (together with an Addendum to Promissory Note (Florida Addendum), Addendum to Promissory Note (Interest Rate Floor), and Prepayment Addendum to Promissory Note (5-4-3-2-1 Prepayment Premium, the "Promissory Note") and secured by a Mortgage dated November 30, 2007 (the Promissory Note and Mortgage will be collectively referred to as the "Loan Documents"). The Property and all present and future rental income generated by the Property were, among other things, pledged as collateral for the Debtor's obligations under the Loan Documents. Secured Creditor is the owner and holder of the Loan Documents.

6. Prior to the filing of the petition, Secured Creditor's predecessor in interest perfected the interest in the rental income and the Final Judgment found that the Secured Creditor has a valid first priority mortgage in the real property and lien on the other pledged collateral (including the rental income). In fact, on January 6, 2011, the State Court entered its *Order Enforcing Assignment of Leases and Rents* (the "Rents Order") making clear that tenants at the Property should pay their monthly rents to the Secured Creditor, and that the Secured Creditor shall collect the rents derived from the Property and maintain those rents in an interest-bearing account to be established by Secured Creditor.[2]

---

[2] Attached hereto as **Exhibit "B"** is a true and correct copy of the Rents Order.

7. The Debtor is a limited liability company, whose membership interests are, upon information and belief, owned 50/50 by Abel Victores[3] and Ari F. Banegas ("Banegas") (collectively the "Guarantors"). However, on January 4, 2011, Banegas filed a chapter 7 petition for relief with this Court, for which Barry Mukamal ("Mr. Mukamal") is the duly appointed chapter 7 trustee, and as such, Mr. Mukamal is the person in control of Banegas' 50% interest in the Debtor.[4] Nowhere does the Debtor's Voluntary Petition reflect who, on behalf of the Debtor, authorized the filing of the chapter 11 petition in this case.

8. By the Debtor's own admission, there is no equity in the Property. Specifically, Exhibit "A" to the Voluntary Petition (D.E. #1) reflects that the Debtor values its total assets at $650,000, and its total debts at $1,842,791. Moreover, the Debtor's "List of Creditors Holding 20 Largest Unsecured Claims" (D.E. #6) lists the Secured Creditor's total claim in the amount of $1,092,791 consisting of a "Secured Value" in the amount of $650,000. Regardless of how the Debtor came up with the $1,092,791 number, the actual -- and judicially determined -- amount of the claim is that set forth in the Final Judgment, *i.e.*, $1,742,791.42 plus interest at the legal rate from January 10, 2011 through February 28, 2011.

9. As set forth in greater detail below, the Debtor has operated the Property in an abysmal matter and permitted the Property to fall into a state of disrepair based on Debtor's failure and neglect to perform proper maintenance of the Property.

10. The Debtor defaulted under the Loan Documents by: (a) failing to make payments due on the subject loan resulting in the sending of written notice of default on December 2, 2008; (b) failing to pay the real estate taxes for the subject real property for 2008, 2009, and 2010,

---

[3] Victores signed the Debtor's Voluntary Petition as "President." However, because the Debtor is an LLC, it does not have a President and Victores does not appear to be listed as the "President" on any filings with the Florida Secretary of State's Office.

[4] Banegas' chapter 7 case is before Judge Robert A. Mark, Case No. 11-10079-BKC-RAM.

resulting in the issuance of tax certificates for 2008 and 2009; and (c) failing to maintain flood, liability and windstorm insurance for the Property thus requiring the Secured Creditor to obtain forced place insurance on the Property (collectively referred to as the "Defaults").

11. Because of the Defaults, and after notice of default was sent to the Debtor and Guarantors, an action in the Circuit Court of Eleventh Judicial Circuit in and for Miami-Dade County, Florida styled *7770 Note Acquisition, LLC v. AEG 777, LLC, et al.*, Case No. 09-38823 CA 09 (the "Foreclosure Action") was commenced.

12. On January 6, 2011, the State Court conducted an evidentiary hearing on *Plaintiff's Amended Motion for Entry of an Order for Assignment of Rents and for an Expedited Hearing* (the "Rents Motion"). The Debtor did not appear to contest the duly noticed hearing.

13. As noted, on January 10, 2011, Secured Creditor obtained the Final Judgment in its favor and against the Debtor in the amount of $1,742,791.42. Pursuant to the Final Judgment, the Property was to be sold at public sale on March 1, 2011 in accordance with Chapter 45, Florida Statutes.

14. On January 12, 2011, Banegas – not the Debtor – filed a motion to vacate the Rents Order, remarkably arguing that Banegas' individual bankruptcy filing somehow acted as an automatic stay with respect to AEG 777, LLC and to the effectiveness of the Rents Order.

15. The entry of the Rents Order did stop the Debtor or Abel Victores either. Instead, in violation of the Rents Order, Abel Victores, the person who signed the Voluntary Petition on behalf of the Debtor, sent emails to some of the tenants at the Property directing them to send their rent payments to the Debtor.

16. And, if that was not enough, on January 28, 2011, Banegas entered into a lease with a new tenant for Suite 200 at the Property, and in violation of the Rents Order, collected six

5

months of rents in advance.[5] Attached hereto as **Exhibit "C"** is a true and correct copy of the January 28th lease with Statia CPA, P.A. (the "Statia Lease"). However, in order to circumvent the Rents Order, the Statia Lease provides that the "Landlord" is not the Debtor, but rather, an entity called "American Exchange Group",[6] and directs that all payments thereunder be made to "American Exchange c/o Abel Victores."

17. Ultimately, the Secured Creditor was forced to file a response in opposition to Banega's motion to vacate, and on February 7, 2011, Banegas withdrew his motion, which is encompassed within the State Court's Order on Emergency Motion to Vacate Order Enforcing Assignment of Leases and Rents. *See* **Exhibit "E"** attached hereto.

18. Apparently recognizing that all else had failed, and in order to thwart the Secured Creditor's rights one final time, on February 28, 2011, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition")(D.E. #1).

19. The Debtor is, by its own admission, a single asset real estate entity as defined by 11 U.S.C. § 101 (51B). And, according to the Petition, the Debtor's total liabilities are $1,842,791. Tellingly, however, the Debtor's List of 20 Largest Unsecured Creditors contains a total of only 4 creditors, 2 of which are the Secured Creditor:

    a.    7770 Note Acquisition LLC    Mortgage    $1,092,791

    b.    7770 Note Acquisition LLC    $ 800,000[7]

---

[5] At his §341 meeting of creditors, Banegas testified that he did not remember having collected any rents from the Property in January or February. Eventually, Banegas remitted those funds to Secured Creditor but only after Banegas was advised that the matter would be brought before the court.

[6] According to the Florida Secretary of State's Office, the principals of American Exchange Group are Ari Banegas and Abel Victores, and the company is administratively dissolved. *See* **Composite Exhibit "D"** attached hereto.

[7] Notwithstanding that the Secured Creditor is the holder of a Final Judgment, the Debtor lists this $800,000 unsecured claim as contingent, unliquidated, and disputed.

6

  c.  Sergio Cortes             $ 250,000

  d.  Apollo Miami Corp          $ 52,000

20. On March 1, 2011, the Debtor filed its *Emergency Motion for the Use of Cash Collateral and Granting Adequate Protection and for Turnover* (the "Cash Collateral Motion")(D.E. #5) in which it requests the authority to use the Secured Creditor's Cash Collateral to pay for certain expenditures set forth in an attached budget.

21. Upon information and belief, the Debtor continues to grossly mismanage the Property by executing leases with tenants at below market lease rates, entering into new leases without bothering to tell prospective tenants that the Property is subject to a foreclosure sale, and worse yet, by entering into at least one leases not on behalf of the Debtor, but rather, a third party entity the Guarantors own and to whom the rental payments should be made, c/o Victores.

22. The Debtor also does not maintain the Property. For example, since August 2010, the Debtor did not maintain the elevator at the Property, a condition that existed until recently when the Secured Creditor made arrangements to have the elevator repaired. In the past, the electricity at the Property has been turned off due to the Debtor's failure to pay FP&L. In addition, the Secured Creditor was forced to repair sinks and toilets at the Property which were inoperable.

23. Moreover, the Debtor has not paid the real estate taxes on the Property for the years 2008, 2009, and 2010. And, the Debtor did not maintain insurance on the Property thus forcing the Secured Creditor to obtain forced place insurance that is in place through October, 2011.

24. In its present condition, and based upon the Debtor's own proposed budget attached to Cash Collateral Motion, the Property is barely (if at all) generating enough income to take care of the monthly expenses the Debtor proposes to pay. Thus, it is highly unlikely – if not

impossible -- that the Property can generate sufficient income to support an effective reorganization in this case. The Debtor has failed to make the payments under the Mortgage, has failed to pay for real estate taxes, has failed to obtain insurance, and even violated the Rents Order when (1) Banegas filed a completely meritless motion with the State Court that he ultimately withdrew at the last minute, and (2) by entering into the Statia Lease on behalf of American Exchange Group and directing the new tenant to remit its lease payments to American Exchange Group. Clearly, there are serious questions regarding the Debtor's bankruptcy filing, and at the present moment, to the use of the rental income which constitutes Secured Creditor's collateral and which the State Court has already ordered should be held by the Secured Creditor.

## MEMORANDUM OF LAW

**I.       Chapter 11 Case is a Bad Faith Filing and Should be Dismissed for Cause**

11 U.S.C. § 1112[8] provides that bankruptcy cases can be dismissed for cause. It is well established in this Circuit that a Chapter 11 bankruptcy case "may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith". *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). While there is no specific test to determine whether a debtor has filed a petition in bad faith, courts "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights'" *Id.* (quoting *In re Albany Partners, Ltd.*, 479 F.2d 670, 674 (11th Cir. 1984)).

The courts of this Circuit have consistently relied on the following factors when determining whether a petition has been filed in bad faith:

- The debtor has only one asset, the property at issue;

---

[8]       Title 11 of the United States Code shall hereinafter be referred to as the "Bankruptcy Code".

8

- The debtor has few unsecured creditors whose claims are small in relation to the claims of its secured creditors;

- The debtor has few employees;

- the property is the subject of a foreclosure action as a result of arrearages on the debt;

- the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

- the timing of the debtor's bankruptcy filing evidence an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*See Phoenix Piccadilly*, 849 F2.d at 1394-95; *In re State Street Houses, Inc.* 356 F.3d 1345, 1347 9(11th Cir. 2004)(holding that the *Phoenix Piccadilly* factors are appropriate guidelines to consider in singe asset real estate cases).

As set forth below, this chapter 11 case presents ***all*** of the signs of a bad faith filing.

### A.  The Debtor Has Only One Asset, the Property

The Debtor is a single purpose entity whose sole asset consists of the real and personal property that comprise the small office building with only 7 leasable units.  Unfortunately, under the Debtor's control, the Property is not in the best of condition and continues to be grossly mismanaged by the Debtor.

### B.  The Debtor Has Few Unsecured Creditors Whose Claims are Small in Relation to the Claims of the Debtor's Secured Creditors

The Debtor's secured claim to the Secured Creditor ($1,742,791.42)[9] far exceeds those of the Debtor's unsecured claims, of which there are only two ($302,000).

### C.  The Debtor Has Few Employees

Upon information and belief, the Debtor does not have any employees.

---

[9]    This does not even include the amounts owed for real estate taxes for the years 2008, 2009 and 2010 in the amount of approximately $125,596 if paid by March 2, 2011.

**D.     The Property is Subject to a Foreclosure Action**

The Property is presently the subject of the Foreclosure Action, which has already resulted in the entry of the Final Judgment ordering that the Property be sold at public sale on March 1, 2011 in accordance with Chapter 45, Florida Statutes.

**E.     The Debtor's Financial Problems Are Essentially a Dispute Between the Debtor and its Secured Creditor Which Can Be Resolved in the Pending Foreclosure Action**

As reflected in the Petition and the List of 20 Largest Unsecured Creditors, the overwhelming majority of the Debtor's outstanding indebtedness is owed to the Secured Creditor. Accordingly, the Debtor's financial problems are essentially a dispute between the Debtor and the Secured Creditor. The Secured Creditor's claim should be resolved in the pending Foreclosure Action, which has already resulted in the entry of the Final Judgment in favor of the Secured Creditor.

**F.     The Timing of the Debtor's Filing Evidences an Intent to Delay or Frustrate the Legitimate Efforts of the Debtor's Secured Creditors to Enforce Their Rights**

During the Foreclosure Action, the Debtor originally filed for chapter 11 protection in September, 2009 and then did not comply with the Bankruptcy Court's directions to file the required Schedules resulting in Judge Cristol dismissing that case. *See In re AEG 777, LLC*, Case No. 09-29355-BKC-AJC. Then, when it became apparent that Final Judgment was going to be entered, Banegas filed his own chapter 7 case and then tried to vacate the Rents Order by arguing (before withdrawing his motion) that his bankruptcy filing and automatic stay applied to the Debtor. When all else failed, and the foreclosure sale was to happen at 9:00 a.m. on March 1, 2011, the Debtor filed its chapter 11 petition. Given the Debtor's pre-petition mismanagement of the Property, the gamesmanship by the Debtor and the Guarantors, and the timing of the Chapter

11, it is clear that the filing of the Petition is nothing more than the Debtor's latest attempt to delay and frustrate the Secured Creditor's efforts to enforce its rights under the Loan Documents.

**II. The Chapter 11 Case Should be Dismissed Because There is No Realistic Possibility of an Effective Reorganization and the Debtor is Seeking to Delay or Frustrate the Secured Creditor's Efforts to Enforce its Rights under the Loan Documents**

Dismissal of a bankruptcy petition is appropriate for lack of good faith, "[p]articularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor merely seeks to delay or frustrate the legitimate efforts of secured creditors to enforce their rights". *See Albany Partners*, 749 F.2d at 674.

Upon information and belief, the Debtor's only real asset is the Property. Given the Property's condition and the Debtor's admitted lack of revenue or capital, and the amount of secured indebtedness on the Property, including the outstanding real estate taxes that are owed, it is reasonable to conclude that there is no realistic possibility of an effective reorganization in this case. It is unrealistic to believe the Debtor will be able to make payments to its creditors under a feasible plan of reorganization when it cannot even cover the budgeted costs for the Property (as reflected in the Cash Collateral Motion), its only income producing asset. Further, to date, the Debtor has not identified any outside source of revenue or capital that can be used to repay the debts owed to its creditors needed to generate sufficient revenue. Instead, the Debtor has entered into at least one lease for space at the Property in the name of an entity other than the Debtor in order to circumvent the Rents Order.

It is quite clear the chapter 11 case is nothing more than the latest attempt by the Debtor to hinder and frustrate the Secured Creditor's ability to enforce its rights under the Loan Documents. Such bad faith conduct on the part of the Debtor should not be countenanced by this Court and should warrant dismissal of the Chapter 11 Case.

**III.   Secured Creditor is Entitled to Relief From the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code Because (i) Secured Creditor Lacks Adequate Protection, (ii) the Debtor Does Not Have Equity in the Property and (iii) the <u>Property is Not Necessary to an Effective Reorganization</u>**

Section 362(d) of the Bankruptcy Code permits a bankruptcy court to grant an interested party relief from the automatic stay "(i) for cause, including the lack of adequate protection of an interest in property of such party in interest, or (ii) with respect to a stay of an act against property, if the debtor does not have an equity in such property and the property is not necessary to an effective reorganization." *See Acquisition Corp. of America v. Federal Savings and Loan Ins. Corp.*, 96 B.R. 380, 382-83 (S.D. Fla. 1988); *Albany Partners, Ltd.*, 749 F.2d at 673 (affirming dismissal of reorganization petition where debtor lacked equity in the subject property and had no realistic prospect of an effective reorganization).

**A.   Secured Creditor is Entitled to Stay Relief Based on Lack of Adequate <u>Protection</u>**

To date, the Debtor has failed to provide – and cannot provide -- adequate protection to the Secured Creditor in the form of periodic cash payments, additional or replacement collateral or such other relief resulting in the indubitable equivalent of the Secured Creditor's interest in the Property. In the Cash Collateral Motion, the Debtor seeks the entry of an Order giving the Debtor the right to use cash collateral and granting the Secured Creditor a replacement lien on the cash collateral as adequate protection against the diminution in value of the Property (D.E. #5). However, the Secured Creditor already holds a perfected lien in future rental income; thus, the granting of such a "replacement lien" does nothing more than grant the Secured Creditor something it already has. Accordingly, the Secured Creditor believes that such relief does not constitute sufficient adequate protection and objects to the Debtor's use of cash collateral.

Notwithstanding the foregoing, the Debtor has demonstrated that it is only capable of operating the Property in a manner that is detrimental to the Secured Creditor's security interest.

For example, the Debtor did not maintain windstorm or hazard/liability insurance for the Property thus requiring the Secured Creditor to obtain forced place insurance. The Debtor has not paid the real property taxes for 2008, 2009 and 2010. And, the Debtor has permitted various necessities at the Property to remain broken until fixed by the Secured Creditor, namely, the elevator, toilets, and sinks.

### B.   Secured Creditor is Entitled to Stay Relief Because the Debtor Lacks any Equity in the Property and the Property is Not Necessary to an Effective Reorganization

Section 362(d)(2) of the Bankruptcy Code states that a party in interest is entitled to relief from the automatic stay, with respect to a stay of any act against property, if "(a) the debtor does not have an equity in such property, and (b) such property is not necessary to an effective reorganization".

The Debtor – by its own admission -- lacks any equity in the Property. As reflected in the Petition and the List of 20 Largest Unsecured Creditor, the Property is worth only $650,000 and is encumbered with a Final Judgment in the amount in excess of $1.7 million. Based on the foregoing, the Secured Creditor is entitled to stay relief because it is grossly undersecured.

The "effective reorganization" requirement of Section 362(d)(2) of the Bankruptcy Code requires more than a showing that there could conceivably be an effective reorganization. *Acquisition Corp. of America*, 96 B.R. at 383. It means that there "must be a reasonable possibility of a successful reorganization within a reasonable time" *Id.* The mere fact that "the property is indispensable to the [d]ebtor's survival is insufficient". *Id.* As set forth above, the Debtor's sole income producing asset, the Property, cannot generate sufficient revenue to support making the payments under its own budget during the chapter 11, let alone an effective reorganization which would require a tremendous amount of capital and revenue the Debtor does

13

not presently and will not be able to possess. Respectfully, the Debtor has no prospect of an effective reorganization.

### C. Secured Creditor is Entitled to Stay Relief Based on the Debtor's Bad Faith Filing and Pre-Petition Misconduct

A bankruptcy court may terminate an automatic stay when it determines that a bankruptcy petition was filed in bad faith. *Id.* at 384. While no specific test exists for determining whether a bankruptcy petition was filed in bad faith, courts "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed to 'delay or frustrate the legitimate efforts of secured creditors to enforce their rights". *Id.*

As set forth above, the chapter 11 Case satisfies all of the *Phoenix Piccadilly* factors courts look to when determining whether a bankruptcy petition was filed in bad faith. Accordingly this Court should grant Secured Creditor relief from the automatic stay to complete its foreclosure action based on the Debtor's bad faith filing and pre-petition misconduct, including that which has been done in blatant violation of the Rents Order.

WHEREFORE, the Secured Creditor respectfully requests this Court dismiss the Debtor's chapter 11 Case. In the alternative, if the Court does not dismiss the Case, the Secured Creditor requests that the Court grant the Secured Creditor complete relief from the automatic stay to permit the Foreclosure Action to proceed to conclusion and have the Property sold at public sale in accordance with Chapter 45, Florida Statutes. Finally the Secured Creditor requests that the Court deny the Debtor's use of the Secured Creditor's Cash Collateral, and to continue to require the tenants at the Property to remit to the Secured Creditor their monthly

rental payments in accordance with the existing Rents Order, and grant the Secured Creditor such other and further relief as this Court deems just and proper.

Dated: March 3, 2011

Respectfully submitted,

**RASCO KLOCK REININGER PEREZ ESQUENAZI VIGIL & NIETO**
Attorneys for 7770 Note Acquisition LLC
283 Catalonia Avenue, Second Floor
Coral Gables, Florida 33134
Telephone: (305) 476-7100
Facsimile: (305) 476-7102


By: /s/ John D. Eaton
JOHN D. EATON
Florida Bar No. 861367
jeaton@rascoklock.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing, Motion to Dismiss Bankruptcy Case as Bad Faith Filing, or, in the Alternative, for Relief from the Automatic Stay, and Objection to Use of Cash Collateral was served electronically via the Court's CM/ECF system upon the parties who are currently on the list to receive e-mail notice/service for this case on the 3rd day of March, 2011.

By: /s/ John D. Eaton
JOHN D. EATON

4846-2055-5016, v. 2